UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

VERNON DIGGS, individually and
on behalf of those similarly situated,

     Plaintiff,

v.                                                  CASE NO.: 3:18-cv-00367-MMH-MCR

OVATION CREDIT SERVICES, INC.,
a Florida Profit Corporation, TERRY D.
CORDELL, individually, and AMY
MYERS, individually,

     Defendants.

_____/

## DEFENDANTS' RESPONSE OPPOSING PLAINTIFF'S EXPEDITED MOTION TO CONDITIONALLY CERTIFY COLLECTIVE ACTION AND FACILITATE NOTICE TO POTENTIAL CLASS MEMBERS AND MEMORANDUM OF LAW

Pursuant to M.D. Fla. Local Rule 3.01 and this Court's Order dated October 10, 2018 (Doc. 27), Defendants, Ovation Credit Services, Inc. ("Ovation"), Terry D. Cordell ("Cordell"), and Amy Myers ("Myers") (collectively, the "Defendants"), file their Response opposing Plaintiff, Vernon Diggs' ("Diggs") Motion to Conditionally Certify Collective Action and Facilitate Notice to Potential Class Members (Doc. 25) (the "Motion"). For the reasons discussed herein, this Court should deny Diggs' Motion.

## I.  INTRODUCTION AND BACKGROUND[1]

Ovation is a retail credit repair, credit education, and credit monitoring service provider. Terry D. Cordell Dec. at ¶ 3 (Oct. 31, 2018). Ovation sells its products and services

---

[1]References to sworn Declarations are abbreviated as follows: [Declarant Name] Dec. at ¶ ___, followed by the appropriate paragraph number(s). Defendants will file separately the Declarations (and any exhibits thereto) of Terry D. Cordell, Alex R. Poulot, Timothy Scott, and Tazwell Stuart.

to the public by telephone and the internet. *Id.* To facilitate these sales, Ovation employs Credit Analysts. *See id.* at ¶ 13. Ovation pays its Credit Analysts an hourly wage plus commissions based on the number of products and/or services the Credit Analyst sells to individual consumers. *Id.* The value of commissions increases with each sales tier a Credit Analyst reaches, with tiers thresholds existing at 21, 35, and (now) 46 sales. Cordell Dec. at ¶ 13; Tazwell Stuart Dec. at ¶ 4 (October 30, 2018). Before 2018,[2] the minimum number of sales a Credit Analyst had to make over a two-week period before earning commissions was 21.[3] Cordell Dec. at ¶ 13; Timothy Scott Dec. at ¶ 6 (October 30, 2018); Stuart Dec. at ¶ 4. Ovation has never had a company policy or practice of allowing Credit Analysts to work off the clock to reach sales goals. Cordell Dec. at ¶ 15; Scott Dec. at ¶¶ 8-9; Alex R. Poulot Dec. at ¶¶ 6-7, 11 (October 30, 2018); Stuart Dec. at ¶¶ 7-8.

Diggs worked for Ovation as a Credit Analyst from August 9, 2016 through March 26, 2017. Cordell Dec. at ¶ 6. On March 26, 2017, Ovation promoted Diggs to the position of Sales Manager and placed him over a sales team consisting of various Credit Analysts, including Opt-in Plaintiff Michael Robinson ("Robinson"). *Id.* Diggs resigned from his employment with Ovation on November 2, 2017. *Id.*

On March 16, 2018, Diggs filed his Complaint and Demand for Jury Trial (Doc. 1) alleging that, while employed as a "non-exempt inside sales representative," he was not paid for all of his overtime wages despite working more than 40 hours in a single workweek in

---

[2]Under Ovation's commission plan, Credit Analysts currently begin earning commissions after making 16 confirmed sales over a two-week period. Cordell Dec. at ¶ 13.
[3]Ovation will implement corrective action against a Credit Analyst not meeting Ovation's minimum sales goal. Scott Dec. at ¶ 7. Because that process involves verbal counseling, coaching and written warnings, it takes several pay periods to complete. *Id.* Significantly, Ovation does not reprimand or terminate Credit Analysts for not reaching secondary sales goal tiers. *Id.*

violation of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219 ("FLSA"). Doc. 1 at ¶¶ 30-32, 35, 37. Diggs further alleges in his Complaint (without any specificity) that Defendants also violated the FLSA by not paying him at least the federal minimum wage for all hours worked. *Id.* at ¶¶ 34-35, 48-49. Despite bearing a collective action case styling, Diggs' Complaint does not attempt to define any precise "class" to which Diggs belongs other than a general reference to "employees and former employees of Defendants similarly situated to [Diggs] [who] were not paid for all hours worked...." *Id.* at ¶ 45. Clarity absent from the Complaint was provided via Diggs' Motion.[4] *See* Doc. 25.

Between March 26, 2018 and July 3, 2018, Diggs periodically filed Consents to Join this litigation signed (largely before the Complaint was filed) by Kimberly Gosse ("Gosse"), Gabor Szabo ("Szabo"), Daniel Wessels ("Wessels"), Robinson, and Ernest Jackson ("Jackson") (collectively, the "Opt-in Plaintiffs").[5]

On September 26, 2018, Diggs filed his Motion. In the Motion, Diggs alleges for the first time that "to meet [sales] quotas and/or reach the next sales tier, Defendants' supervisors routinely encouraged their [inside sales representatives] to [work] off-the-clock, and, as a result, ISRs typically work more than forty (40) hours per week." Doc. 25 at p. 4. Diggs has submitted six boilerplate, substantively identical declarations signed by him and the Opt-in Plaintiffs in support of conditional certification. Similar to the Motion, these declarations all claim, without any basis, that "Defendants' [sic] and its supervisors regularly encouraged all

---

[4] On April 20, 2018, Defendants timely answered Diggs' Complaint. *See* Doc. 12. In doing so, Defendants denied certain material allegations and raised several affirmative and other defenses to Diggs' claims, including a retail/service exemption defense provided under 29 U.S.C. § 207(i). *Id.* at p. 3.

[5] *See* Doc. 7-1 (signed February 8, 2018/filed March 26, 2018), Doc. 8-1(signed February 10, 2018/filed March 30, 2018), Doc. 11-1 (signed February 6, 2018/filed April 11, 2018), and Doc. 15-1 (signed February 21, 2018/filed May 15, 2018); Doc 21-1 (filed July 3, 2018). Diggs and the Opt-in Plaintiffs are referred to collectively herein as "Plaintiffs."

inside sales representatives … to work over forty (40) hours in a workweek to reach our required sales quota or the next commission tier," and that "no inside sales representative, including me, received any compensation whatsoever for hours worked over 40." Doc. 25-5 at ¶¶ 8-9.[6] Accordingly, Diggs now seeks to represent a putative class of inside sales representatives employed by Defendants between March 16, 2015 and the present. *See* Docs. 25, 25-1.

Diggs' Motion is a Trojan horse. Diggs hopes that a recitation of elements combined with the bare assertions, conclusory allegations in cookie-cutter affidavits, and mischaracterizations of the record will convince the Court that this matter is ripe for collective adjudication. In reality, if the Court grants Diggs' Motion, the Court will be faced with fact-intensive, individual specific miniature trials delving into, *inter alia*, exemption issues and each Credit Analysts' day-to-day conduct and interactions, which are utterly inappropriate for disposition as a collective action. Furthermore, collective action here is inappropriate because Ovation disseminates written overtime and timekeeping policies, and those Plaintiffs who worked more than 40 hours in a single workweek received overtime wages. *See* Cordell Dec. at ¶¶ 6-11, 16-18. Accordingly, Diggs' Motion should be denied.

## II.  LEGAL ARGUMENT

### A.  <u>Standard for Conditional Certification</u>

The FLSA permits plaintiffs to proceed collectively on behalf of themselves and other employees, provided that the plaintiffs can establish that the employees they seek to represent are "similarly situated" to the plaintiffs and desire to opt-in to the action. 29 U.S.C. § 216(b);

---

[6] *See also* Docs. 25-6 at ¶¶ 7-8, 25-7 at ¶¶ 7-8, 25-8 at ¶¶ 7-8, 25-9 at ¶¶ 8-9, 25-10 at ¶¶ 8-9.

*see also Dybach v. Fla. Dep't of Corrs.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991). "The Eleventh Circuit Court of Appeals has 'suggested that district courts deciding whether to certify a collective action [under § 216(b)] engage in a two-stage analysis....'" *Kubiak v. S.W. Cowboy, Inc.*, No. 3:12-cv-1306-J-34JRK, 2014 U.S. Dist. LEXIS 80225, at *29 (M.D. Fla. June 12, 2014) (quoting *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 952 (11th Cir. 2007)).[7] Under that framework, a district court may (1) consider conditional certification after determining (a) that there are similarly situated individuals (b) who desire to opt in to the action, and (2) later consider a motion to decertify the class. *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001).

Diggs' Motion expends considerable energy describing the leniency of the standard for conditional certification under the suggested two-tiered approach. While the notice stage standard is "fairly lenient," it is not invisible or insignificant, and it cannot be satisfied by "the conclusory allegations of a few employees." *Parilla v. Allcom Constr. & Installation Servs., LLC*, No. 6:08-cv-1967-Orl-31GJK, 2009 U.S. Dist. LEXIS 130421, at *3-4 (M.D. Fla. May 22, 2009) (internal citations omitted); *Kubiak*, 2014 U.S. Dist. LEXIS 80225, at *35 (same). Rather, to make the requisite showing, a plaintiff must offer "detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1991).

---

[7]"Although suggested, the two-stage approach is not required and the district court has discretion in considering class certification." *Kubiak*, 2014 U.S. Dist. LEXIS 80225, at *31 n. 22 (citing *Hipp*, 252 F.3d at 1219). "It [is] within the court's discretion to consider the merits of the claims before their amenability to class certification." *Telfair v. First Union Mort. Corp.*, 216 F.3d 1333, 1343 (11th Cir. 2000). Applied to FLSA cases, courts have postponed or denied conditional certification where, for example, issues of exemption existed. *See, e.g., Calvo v. Summit Broadband, Inc.*, No. 2:16-cv-746-FtM-38MRM, 2018 U.S. Dist. LEXIS 131381, at *36-37 (M.D. Fla. Apr. 17, 2018) *adopted by* 2018 U.S. Dist. 131372 (M.D. Fla. May 3, 2018). Here, a fundamental legal question exists: whether Ovation's Credit Analysts are exempt from overtime under 29 U.S.C. § 207(i). This exemption issue is not only dispositive, but it also makes conditional certification here inappropriate.

Significantly, under § 216(b), "the power to authorize notice must be exercised with discretion and only in appropriate cases." *Haynes v. Singer Co.*, 696 F.2d 884, 886 (11th Cir. 1983). If a plaintiff could obtain initial certification by merely reciting § 216(b)'s elements, and basing those recitations on conclusory or inadmissible evidence, then a motion for class certification could never be precluded at the first stage of the *Hipp* analysis and courts would be regularly used as the marketing arm of wage-and-hour law firms.

**B.   Digg's Motion Should Be Denied Because Plaintiffs have Failed to Establish that Putative Class Members are Similarly Situated**

For this cause to proceed as a collective action, Diggs bears the burden of showing that he and the members of the purported class he seeks to represent are "similarly situated." *Dybach*, 942 F.2d at 1567-68. Importantly, determining whether employees are similarly situated requires more than just a matching of job responsibilities and pay provisions. *Anderson*, 488 F.3d at 953. A plaintiff "must make some rudimentary showing of commonality between the bases for his claims and that of the potential claims of the proposed class, beyond mere facts of duties and pay provisions." *Lewis-Gursky v. Citigroup, Inc.*, No. 8:15-cv-2887-T-24-MAP, 2017 U.S. Dist. LEXIS 31135, at *9 (M.D. Fla. Mar. 6, 2017). In the absence of this proof, conditional certification does not further the interests of judicial economy and presents "a ready opportunity for abuse." *Anderson,* 488 F.3d at 953.

**1.   Plaintiffs' conclusory assertions that other workers are similarly situated are insufficient**

Again, a plaintiff must make "substantial" and "detailed" allegations supported by affidavits to satisfy the "similarly situated" aspect of the notice stage analysis. *Kubiak*, 2014 U.S. Dist. LEXIS 80225, at * 35. "Simply claiming a violation of the FLSA will not suffice

to meet the 'similarly situated requirement.'" *Ledbetter v. Pruitt Corp.*, No. 5:05-CV-329 (CAR), 2007 U.S. Dist. LEXIS 10243, at *15 (M.D. Ga. Feb. 12, 2007). "Indeed, federal courts across the Middle and Southern Districts of Florida have routinely denied requests for conditional certification where plaintiffs attempt to certify a broad class based only on the conclusory allegations of a few employees." *Rappaport v Embarq Mgmt. Co.,* No. 6:07-cv-468-Orl-19DAB, 2007 U.S. Dist. LEXIS 92869, at *11 (M.D. Fla. Dec. 18, 2007).

Here, Diggs has submitted six declarations in support of the notion that similarly situated employees exist. *See* Doc. 25 at p. 10; Docs. 25-5 to 25-10. However, the Plaintiffs' cut-and-paste, form declarations[8] are vague, conclusory and insufficient given Diggs' burden.

First, the declarations establish that Diggs (and Gosse) is distinguishable from the putative class because of his (and Gosse's) employment as a Sales Manager during the relevant period – arguably the supervisory position Diggs (and the Opt-in Plaintiffs) complain "regularly encouraged all inside sales representatives … to work over forty (40) hours in a workweek to reach our required sales quotas or the next commission tier." Doc. 25-5 at ¶ 8; *compare* Doc. 25-5 at ¶ 4 ("Throughout my employment, I worked as an inside sales representative employee.") *with* Cordell Dec. at ¶ 6 ("From March 26, 2017 until his resignation on November 2, 2017, Ovation employed Diggs as a Sales Manager….").

Additionally, the declarations show that Diggs and the Opt-in Plaintiffs are dissimilar in compensation to the rest of the putative class. All six declarations state that Ovation paid

---

[8]Plaintiffs' declarations make no effort to hide their uniformity. Aside from the declarant's name, duration of employment, a slight variation formatting, and the addition of a paragraph 11 for Diggs, the Plaintiffs' declarations are virtually identical and make clear that the chosen evidence was selected for the declarants; all each declarant had to do was sign his or her name. These declarations are precisely the type of cookie cutter declarations of which courts strongly disapprove. *See Kelley v. Taxprep1, Inc.*, No. 5:13-cv-451-Oc-22PRL, 2014 U.S. Dist. LEXIS 184589, at *4-5 (M.D. Fla. Apr. 2, 2014); *Holmes v. Quest Diagnostics*, Inc., Case No. 11-80567-Civ-WILLIAMS, 2012 U.S. Dist. LEXIS 192821, at *4-8 (S.D. Fla. June 14, 2012).

them "by the hour for each hour worked up to 40 hours per workweek." Docs. 25-5 at ¶ 5, 25-6 at ¶ 4, 25-7 at ¶4, 25-8 at ¶ 4, 25-9 at ¶ 5, 25-10 at ¶ 5. However, the Credit Analysts that Diggs seeks to represent are not paid that way; rather, Ovation pays its Credit Analysts an hourly wage plus commissions based on the number of Ovation products and/or services sold. *See* Cordell Dec. at ¶ 13. Thus, Plaintiffs' declarations, on their face, show that Diggs and the Opt-in Plaintiffs are not similarly situated to the putative class.

Second, the statements in the declarations lack any context and are simply conclusory assertions. For example, all six declarations make the conclusory statement that "all of Ovation's inside sales representatives performed similar duties to me…." Docs. 25-5 at ¶ 10, 25-6 at ¶ 9, 25-7 at ¶ 9, 25-8 at ¶ 9, 25-9 at ¶ 10, 25-10 at ¶ 10. Plaintiffs then vaguely describe the Plaintiffs' job duties as being "required to call potential leads and sell them credit repair services." Docs. 25-5 at ¶ 6, 25-6 at ¶ 5, 25-7 at ¶ 5, 25-8 at ¶ 5, 25-9 at ¶ 6, 25-10 at ¶ 6. No declaration offers any necessary detail regarding the Plaintiffs' job duties. The declarations provide no information about the telephone calls Plaintiffs were required to make or who or what these potential leads were. Further, Plaintiffs' declarations offer no details about where the Plaintiffs performed their work, their rate of pay, their daily schedule, their supervisors (other than at the executive level), any discipline they received for not meeting sales quotas, or their separation from Ovation. *See generally* Docs. 25-5 - 25-10.

Moreover, critical to Plaintiffs' allegations of unpaid overtime and off the clock work, the declarations (i) provide no specific example of when any of the Plaintiffs' worked more than 40 hours in a workweek or worked off the clock, (ii) fail to identify a specific person who required them to work off the clock, and (iii) fail to state that they actually worked off-

the-clock or otherwise did not record time worked over 40 hours in a workweek. *See id.* Indeed, Plaintiffs declarations are entirely silent as to off-the-clock work despite that being the lawsuit's basis. Thus, Plaintiffs' declarations fail to engage Defendants' declarations, which establish, *inter alia*, that (i) Ovation has never had a policy or practice of requiring or knowingly allowing its Credit Analysts to work off the clock, (ii) Ovation had policies prohibiting unrecorded work and took steps to notify its employees about them, and (iii) Ovation management never instructed or encouraged Credit Analysts to work off the clock or not record time worked. *See* Cordell Dec. at ¶¶ 15-18, Ex. A; Scott Dec. at ¶¶ 8-9; Poulot Dec. at ¶¶ 6-7, 11; Stuart Dec. at ¶¶ 7-8.

Likewise, Plaintiffs' blanket statements do not rebut Defendants' evidence indicating that Plaintiffs did not work off the clock and were paid for any overtime worked. *See* Cordell Dec. at ¶¶ 6-11, 19; Scott Dec. at ¶¶ 10-11; Poulot Dec. at ¶ 8; Stuart Dec. at ¶¶ 9-10. Further, Plaintiffs' superficial declarations are insufficient to refute Defendants' evidence that no class-wide wage violation occurred. *See* Scott Dec at ¶¶ 5-6, 8-9; Poulot Dec. at ¶¶ 4-7; Stuart Dec. at ¶¶ 5, 7-8.

Simply, Plaintiffs' overgeneralize declarations provide "a story without detail and, thus, without probative value." *Holmes*, 2012 U.S. LEXIS 192821, at *5-6.[9] Plaintiffs' identical and conclusory statements do nothing to advance Diggs' argument that he or any other Opt-in Plaintiff is similarly situated to the putative class. Therefore, Diggs' Motion should be denied. *See id.* at *10 (denying conditional certification where identical

---

[9]*See Calvo*, 2018 U.S. Dist. LEXIS 131381, at *32-33 (finding identical, "cut-and-paste, form declarations" consisted of conclusory assertions and, therefore, not probative of similarly situatedness); *Kelley*, 2014 U.S. Dist. LEXIS 184589, at *4-5 (same); *Ulysses v. Divosta Bldg. Corp.*, 2006 U.S. Dist. LEXIS 89414, at *4 (S.D. Fla. Dec. 7, 2006) (plaintiff's "affidavit is not probative of the similarly situated question as it merely offers conclusory allegations and self-serving personal beliefs about purported claims of identified third parties.").

declarations lacked enough detail to successfully engage defendant's declarations); *Tussing v. Quality Res., Inc.*, No. 8:09-cv-1833-T-26AEP, 2009 U.S. Dist. LEXIS 110190, at *7-8 (M.D. Fla. Nov. 25, 2009) (denying conditional certification based in part on "the same affidavit signed by six different employees, with few minor differences….").

### 2. The putative class members are not similarly situated because the prospective class could contain both exempt and non-exempt employees

Because putative class members must be similarly situated, federal courts routinely deny conditional certification where the prospective class could contain both exempt and non-exempt employees. *See e.g., Calvo*, 2018 U.S. Dist. LEXIS 131381, at *33, 36-37; *Tussing*, 2009 U.S. Dist. LEXIS 110190, at *8-10. Here, there could be significant dissimilarities – even among the Plaintiffs – in exempt status under the FLSA.

As discussed further in Section B(3), *infra*, Credit Analysts whose commissions equaled or exceeded fifty percent of their total compensation during the representative period are exempt from the FLSA's overtime requirements under 29 U.S.C. § 207(i). Conversely, any Credit Analysts who did not earn enough commissions would be non-exempt.

Moreover, some of the putative class members served as managers during the proposed notice period. As managers, these employees were paid on a salary basis and were exempt from overtime pursuant to the FLSA's "white-collar" exemptions. *See* Cordell Dec. at ¶ 6. Indeed, Diggs and Gosse were salaried managers and treated as exempt during portions of the suggested notice period. *Id.* at ¶¶ 6-7. Similarly, Timothy Scott transitioned from Credit Analyst to Sales Manager in May 2017. Scott Dec. at ¶ 2. Because separate and distinct analyses will be required for employees who were potentially exempt under Section 7(i), those who were exempt under Section 13, and those who were not paid a salary and

10

earned insufficient commissions, conditional certification here would be inappropriate.

### 3. The potential class members are not similarly situated because an individualized analysis is required to determine whether each purported class member is subject to the FLSA's 7(i) exemption

Defendants maintain that Plaintiffs and the putative class members are exempt from the FLSA's overtime requirements pursuant to 29 U.S.C. § 207(i).[10] The 7(i) exemption is applicable to retail or service establishment employees who are paid, at least in part, on a commission basis. *See* 29 U.S.C. § 207(i). Importantly, the 7(i) exemption differs from other FLSA exemptions because it is not based on the employee's job duties; rather, it is based on the pay an employee receives and the employer's status as a retail or service establishment. *Compare id. with* 29 U.S.C. § 213(a)(1). Moreover, unlike the FLSA's white-collar exemptions, exemption under Section 7(i) is not static, but can fluctuate periodically depending an employee's compensation. *See, e.g., Vicideo v. New Horizons Computer Learning Ctr. of Columbus, Ltd.*, 246 F. Supp. 2d 886, 895-96 (S.D. Ohio 2003) (granting summary judgment based on 7(i) for pay periods where more than 50% of compensation was derived from commissions, and denying summary judgment on remaining periods).

In *Johnson v. TGF Precision Haircutters, Inc.*, a decertification case, the District

---

[10]To qualify for the 7(i) exemption, three criteria must be met: (1) the employer must be a retail or service establishment; (2) the employee must receive more than half of his or her compensation from commissions during the representative period; and (3) the employee's regular rate of pay must exceed one and one-half times the minimum wage. 29 U.S.C § 207(i). "[A] 'retail or service establishment' is defined as 'an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or both) is not for resale and is recognized as retail sales or services in the particular industry.'" *Reich v. Cruises Only, Inc.*, No. 95-660-CIV-ORL-19, 1997 U.S. Dist. LEXIS 23727, at *6-7 (M.D. Fla. June 5, 1997). Here, Ovation qualifies as a retail or service establishment for purposes of Section 7(i). *See id.* at *10-19; *Wells v. TaxMasters, Inc.*, No. 4:10-CV-2373, 2012 WL 4214712, at *5-6 (S.D. Tex. Sept. 18, 2012); U.S. Dep't of Labor, Wage and Hour Div. Opinion Letter FLSA2018-21 (Aug. 28, 2018) (recognizing that FLSA exemptions deserve a "fair reading" and concluding that a company that "sells a technology platform to merchants that enables online and retail merchants to accept credit card payments from their customers from a mobile device, online, or in-person" is a "retail or service establishment" for purposes of Section 7(i)); *see also* Cordell Dec. at ¶¶ 3, 13.

Court for the Southern District of Texas explained Section 7(i)'s effect on a collective action:

> § 7(i) is in fact a highly individualized defense because its application requires week-by-week and other periodic calculations (e.g., not less than monthly on one part of the formula) specific to each individual Plaintiff and his or her particular circumstances. … With respect to commissions, § 7(i) also requires the totaling of each particular Plaintiff's commissions over a "representative period" of not less than one month. … The proof required to establish these individualized § 7(i) exemption defenses would become the overwhelming focus of a trial which, to a jury or factfinder, [and] would amount to trials of perhaps as many as 200 individual cases. Thus, the §7(i) exemption defense weighs heavily in favor of decertification.

No. H-03-3641, 2005 U.S. Dist. LEXIS 44259, at *27-28 (S.D. Tex. Aug. 17, 2005) (internal citations omitted). Recognizing the foregoing, courts in this judicial district have denied motions for conditional certification when individual inquiries into 7(i) considerations could exist.[11] *See, e.g., Calvo*, 2018 U.S. Dist. LEXIS 131381, at *36-37; *Tussing*, 2009 U.S. Dist. LEXIS 110190, at *8-10; *cf. Kelley*, 2014 U.S. Dist. LEXIS 184589, at *5-7 (denying motion for conditional certification where plaintiff-specific inquires would have been needed to determine whether class members were covered by the FLSA's "executive exemption.").

For instance, in *Tussing v. Quality Resources, Inc.*, call center employees alleged, *inter alia*, that the employer required them to work off the clock at the beginning and end of

---

[11] Diggs cites seven cases that he asserts are contrary to this proposition. *See* Doc. 25 at pp. 11-12. However, those cases are distinguishable from the circumstances here to the extent that the 7(i) exemption issue was raised in a context other than opposition to conditional certification. *See e.g., Pack v. Investools, Inc.*, No. 2:09-cv-1042 TS, 2011 U.S. Dist. LEXIS 92662, at *2-4 (D. Utah Aug. 18, 2011) (addressing stayed motion for conditional certification after determining 7(i) exemption applicability at summary judgment stage); *Nieves v. Ins. Care Direct, Inc.*, No. 09-61330-Civ-Cohn/Seltzer, 2010 U.S. Dist. LEXIS 5669, at *7, 10-11 (S.D. Fla. Jan. 25, 2010) (addressing 7(i) issued raised in defendants' motion to dismiss, but not in response to motion for conditional certification). Other cases relied upon by Diggs are not binding, as they merely reflect the exercise of discretionary authority under the circumstances. For example, in *Desimoni v. TBC Corp.*, Judge Chappell declined to exercise the Court's authority to address Section 7(i) exemption issues a third time at the conditional certification stage after having already denied, months prior, defendant's motions to dismiss and for summary judgment addressing the matter. *See* No. 2:15-cv-366-FtM-99CM, 2016 U.S. Dist. LEXIS 88088, at *5 (M.D. Fla. July 7, 2016). Importantly, however, Judge Chappell has since reversed course and denied conditional certification, in part, on Section 7(i) grounds. *See Calvo*, 2018 U.S. Dist. 131372, at *2.

their shifts, as well as every other Saturday, to accomplish job requirements incapable of being met in a 40-hour workweek. 2009 U.S. Dist. LEXIS 110190, at *3-4. The evidence submitted at the conditional certification stage indicated that pay provisions for hourly and commissioned rates varied greatly depending on the type of sales, the job title, and the particular shift worked. *Id.* at *9. The court found that such facts "call[] into question whether the employer has met the requirements applicable to the exemption of section 7(i)...." *Id.* Consequently, the court held that "[i]n companies where individuals holding a particular job title are classified as exempt employees and others, non-exempt, and 'still others fluctuate quarterly depending on their specific duties,' the desirability of using conditional certification has not been established." *Id.*

More recently, in *Calvo v. Summit Broadband, Inc.*, the court was faced with certifying a class of cable and internet service technicians. 2018 U.S. Dist. LEXIS 131381, at *2. The evidence in *Calvo* established that the employer paid the technicians on a per-job or piece-rate basis, and that the hours and pay of the technicians varied. *Id.* at *36. The court recognized that those facts meant that plaintiff-specific inquiries were likely and, depending on the results of those inquiries, both exempt and non-exempt employees could be in the proposed class. *Id.* at *36-37. Since such "inquiries do not lend themselves to...resolv[ing] efficiently common issues of fact and law," the court denied certification. *Id.* at *37

Near identical issues involved in *Calvo* and *Tussing* are prevalent here. As explained above, Ovation pays its Credit Analysts a base hourly rate plus commissions. Cordell Dec. at ¶ 13. Commissions are paid pursuant to a structured plan, which has fluctuated during the relevant period. Cordell Dec. at ¶ 13; Scott Dec. at ¶ 6; Poulot Dec. at ¶ 4; Stuart Dec. at ¶ 4.

Regardless, Ovation's Credit Analysts earn commissions based on the number of services and/or products sold to Ovation's customers. Cordell Dec. at ¶ 13. Commission earnings vary greatly by Credit Analyst and by pay period. *Id.* Like *Calvo* and *Tussing*, these facts indicate a need for highly specific and individualized inquiries to determine whether the 7(i) exemption is met, not only as to each putative class member, but also during each representative period when Credit Analysts could have been earned commissions.[12]

Simply, the Section 7(i) issues that are predominant in this case cannot and should not be determined on a representational basis. Accordingly, as in *Calvo* and *Tussing*, conditional certification should be denied. *Cf. Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 499 (D.N.J. 2000) ("litigating this case as a collective action [where determination of exempt status would likely need to be made on an employee-by-employee basis] would be anything but efficient...mak[ing] collective treatment improper").

### 4. The putative class members are not similarly situated because an individualized analysis regarding hours worked will be required

While not asserted in Plaintiffs' evidentiary submission, the crux of Diggs' lawsuit is that Defendants "encouraged ISRs to [work] off-the-clock," causing Plaintiffs to work more than 40 hours in a workweek. Doc. 25 at p. 4. As such, the very nature of Plaintiffs' claims will require individual inquiries into each Credit Analyst's day-to-day activities – thereby making this case inappropriate for collective treatment. *See Bennett v. Hayes Robertson Group, Inc.*, 880 F. Supp. 2d 1270, 1285 (S.D. Fla. 2012); *Cartner v. Hewitt Assocs., LLC,*

---

[12]For example, resolving one aspect of the 7(i) inquiry would require the parties and the Court to examine numerous payroll documents to determine the precise amount of each class member's commissions, and whether Section 7(i)'s fifty-percent requirement has been met for each representative period. Beyond being cumbersome, these inquiries may result in the exemption applying to certain prospective class members in certain weeks, and other members of the proposed class in other weeks.

No. 6:09-cv-1293-Orl-31DAB, 2009 U.S. Dist. LEXIS 97595, at *7 (M.D. Fla. Oct. 7, 2009).

Ovation has at all relevant times maintained a policy of paying its employees for all working time, including overtime (where required by law). Cordell Dec. at ¶¶ 15-17. Though Plaintiffs may allege that a unifying plan emanating from Defendants' management gave rise to their claims, the evidence submitted in this matter does not support such a proposition. For example, in trying to establish uniform treatment, Plaintiffs' all aver that unidentified supervisors regularly encouraged – not required – Credit Analysts to work more than 40 hours in a workweek. *See* Docs. 25-5 at ¶ 8, 25-6 at ¶ 7, 25-7 at ¶ 7, 25-8 at ¶ 7, 25-9 at ¶ 8, 25-10 at ¶ 8. Thus, Plaintiffs' own allegations establish that each Credit Analysts had a choice in the matter, and, as per the parties' respective declarations, Plaintiffs allegedly elected to keep working while other Credit Analysts did not. *See* Scott Dec. at ¶¶ 5-6; Poulot Dec. at ¶¶ 4-6; Stuart Dec. at ¶¶ 7-8. Given such individualized discretion, determining whether Credit Analysts worked off the clock will require an individual assessment of each Credit Analyst's daily activities, interactions with supervisors, and knowledge of Ovation's policies. Such individualization renders certification inappropriate.

### C.   Diggs' Motion Should Be Denied Because No Evidence, Aside from Diggs' Subjective Belief, Suggests that Other Potential Members Desire to Opt In

"Certification of a collective action and notice to a potential class is not appropriate to determine <u>whether</u> there are others who desire to join the lawsuit." *Kubiak*, 2014 U.S. Dist. LEXIS 80225, at *36 (emphasis in original). Accordingly, a court "should satisfy itself that there are other employees … who desire to 'opt-in'" before granting conditional certification. *Dybach*, 942 F.2d at 1567-68. To meet this threshold, a plaintiff must affirmatively identify members of the putative class likely to opt in after receiving notice of a collective action.

15

*Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008).

Importantly, there must be a "reasonable basis" for a plaintiff's claim that there are other similarly situated employees interested in participating. *Calvo*, 2018 U.S. Dist. LEXIS 131381, at *18-19. Speculative, vague, or conclusory allegations about other potential plaintiffs existing are not enough. *Id.* at *19. Likewise, mere anticipation that others might want to join the lawsuit is insufficient to justify class certification. *Kubiak*, 2014 U.S. Dist. LEXIS 80225, at *35; *see also Rodgers v. CVS Pharm., Inc.*, No. 8:05-CV-770-T-27MSS, 2006 U.S. Dist. LEXIS 23272, at *8 (M.D. Fla. Mar. 22, 2006) ("A plaintiff's ... belief in the existence of other employees who desire to opt in and 'unsupported expectations that additional plaintiffs will subsequently come forward are insufficient to justify' certification of a collective action and notice to a potential class.").

Here, Diggs attempts to support his argument that there are other Ovation Credit Analysts who desire to opt in to this action through (1) his own declaration and (2) the five Opt-in Plaintiffs' respective Consents to Join this lawsuit.[13] *See* Doc. 25 at pp. 5-6; Doc. 25-5 at ¶ 11. Regarding the latter, that there have been five opt in plaintiffs within almost eight months of litigation is not dispositive, especially considering that (1) the Opt-in Plaintiffs could have added as named, party plaintiffs to this action well before Diggs filed his lawsuit on March 16, 2018[14] or subsequent amendment before Diggs filed the Motion, and (2) no one has opted into this case since July 3, 2018[15] despite Diggs' recruitment efforts. *See Zuliani v.*

---

[13]The Opt-in Plaintiffs' declarations provide no evidence whatsoever that other Credit Analysts want to participate in this lawsuit and are, therefore, irrelevant to any analysis here.

[14]*Compare* Doc. 1 (filed March 16, 2018) *with* Doc. 7-1 (filed March 26, 2018, but signed February 8, 2018), Doc. 8-1(filed March 30, 2018, but signed February 10, 2018), Doc. 11-1 (filed April 11, 2018, but signed February 6, 2018), and Doc. 15-1 (filed May 15, 2018, but signed February 21, 2018).

[15]*See* Doc. 21-1 (July 3, 2018).

*Santa Ana, LLC*, No. 17-62080-CIV-MORENO/SELTZER, 2018 U.S. Dist. LEXIS 42922, at

*15, n.6 (S.D.Fla. Mar. 14, 2018); Scott Dec. at ¶ 15, Poulot Dec. at ¶ 13, Stuart Dec. at ¶ 14.

Similarly, Diggs' declaration does not definitively establish that other Ovation Credit

Analysts desire to opt-in to this action. *See* Doc. 25-5. Rather, it merely posits that Diggs

"understands" that such class members exist based on unspecified, pre-litigation "discussions

with other inside sales representatives during my employment with Ovation[.]" *Id.* at ¶ 11.

Such skin-deep allegations amount to nothing more than unsupported anticipation and belief,

both of which are insufficient to demonstrate that other employees might join the lawsuit. *See*

*Palacios v. Boehringer Ingelheim Pharmaceuticals, Inc.*, No. 10-22398-Civ-UU, 2011 U.S.

Dist. LEXIS 92002, at *12-13 (S.D. Fla. Apr. 19, 2011). Moreover, Diggs' out-of-court

statements with other employees about this litigation are inadmissible hearsay and should not

be considered by the Court. *Id.* (finding the statement "I have spoken to multiple other

former [sic] Rep employees throughout the state of Florida … who advised that, if given

formal notice in this case, they would opt-in" constituted inadmissible hearsay).

Further, Diggs' averment of who might join is curious and inaccurate. In his May 3,

2018, declaration, Diggs identifies by name nine Credit Analysts whom he believed would

opt-in this case, two of which include Robinson (who signed a consent to join the lawsuit on

February 21, 2018)[16] and Jackson – both of whom opted into this action without the court-

approved notice that Diggs' claims is so desperately needed. Diggs' declaration also names

Alex Poulot and Tazwell Stuart as people Diggs believes might opt in to this lawsuit.

However, as established by their declarations, neither Mr. Poulot nor Mr. Stuart wants to opt

---

[16] *See* Doc. 15-1.

17

in to this litigation and have so told Diggs. *See* Poulot Dec. at ¶ 13 (noting that Mr. Poulot has been required to change his telephone number because of the number of calls and messages regarding this lawsuit from Diggs and Jackson); Stuart Dec. at ¶ 14. The same is true for Mr. Scott. Scott Dec. at ¶ 15. Beyond being the only relevant, admissible evidence on the matter, Defendants' declarations lead to the inevitable conclusion that either no additional opt-in plaintiffs exist or Diggs does not know who might opt in, if anyone.

A "showing that others desire to opt in is required before certification and notice will be authorized by the court." *Rodgers*, 2006 U.S. Dist. LEXIS 23727, at *8. Diggs' failure to offer anything more than one Consent to Join signed after this lawsuit was filed and Diggs' own unsupported confidence that like-minded class members exist is insufficient for certification. Thus, the Court should deny Diggs' Motion and avoid sanctioning a fishing expedition for opt in plaintiffs. *See Kubiak*, 2014 U.S. Dist. LEXIS 80225, at *35-36.

### D.  Diggs' Motion Should Be Denied Because Ovation Maintained Written Policies Providing for Overtime and Prohibiting Off-the-Clock Work

One final reason to deny conditional certification is that Ovation disseminates a written policy stating that its non-exempt employees will receive overtime payable at one and a half times the applicable rate of pay per hour. *See* Cordell. Dec. at ¶ 17.[17] The relevant policies here are included in Ovation's Employee Handbook, which each of the Plaintiffs acknowledged receiving during their employment. *See* Cordell Decl. at ¶¶ 16-18, Ex A.

---

[17]*See also Holmes*, 2012 U.S. LEXIS 192821, at *8-9 n. 3 (recognizing that "'[t]he existence of a written policy dictating overtime pay is one factor weighing against conditional certification.'"); *Richie v. Blue Shield of Cal.*, No. C-13-2693 EMC, 2014 U.S. Dist. LEXIS 170446, at *31-32 (N.D. Cal. Dec. 9, 2014) (finding "the presence of express policies prohibiting off-the-clock work, while by no means dispositive, tends to contradict the existence of a 'common policy' and therefore is a factor against FLSA certification."); *Richardson v. Wells Fargo Bank, N.A.*, No. 4:11-cv-00738, U.S. Dist. LEXIS 12911, at *18-19 (S.D. Tex. Feb. 2, 2012) (same).

Importantly, Ovation's policy makes no distinction between "approved" and "unapproved" overtime; it simply provides that "overtime will be compensated at the rate of one and one-half times (1½) his/her normal hourly wage for all time worked in excess of 40 hours each week, unless otherwise required by law." *Id.* at ¶ 17.

Plaintiffs have offered no evidence that Ovation's management advised them not to record their time worked. Indeed, Plaintiffs could not assert that in good faith since Ovation has at all material times had one or more written policies explicitly preventing off-the-clock work. *Id.* at ¶¶ 16-17. Ovation's Timekeeping policy expressly states, "Accurately recording time worked is the responsibility of every nonexempt employee. ... Nonexempt employees should accurately record the time they being and end their work, as well as the beginning and ending time of each meal period." *Id.* at ¶ 16. Similarly, the "Timekeeping Procedures" policy in Ovation's revised Employee Handbook requires all employees to record their actual time worked for payroll and benefit purposes and that nonexempt employees "must record the time work begins and ends, as well as the beginning and ending time of any departure from work for any non-work-related reason...."[18] *Id.* at ¶ 17.

Neither Diggs nor the Opt-in Plaintiffs ever complained to any Ovation manager or supervisory employee about any alleged off-the-clock work or unpaid overtime during their employment. *See id.* at ¶ 19. Plaintiffs arguably could not, since Ovation paid them for overtime worked during their employment.[19] Thus, Diggs' Motion should be denied.

---

[18] The policy further provides that "[a]ltering, falsifying or tampering with time records is prohibited and subjects the employees to discipline, up to and including termination[,]" and advises that "Any errors in the employee time records should be reported immediately to the employee's supervisor...." Cordell Dec. at ¶ 17.

[19] Ovation paid Diggs for 2.45 hours of overtime he worked over seven weeks between August 2016 and March 2017. Cordell Dec. at ¶ 6. Ovation paid Gosse for 8.6 hours of overtime worked over 10 weeks between March 2016 and December 2016. *Id.* at ¶ 7. Robinson was paid for 8.47 hours of overtime he worked over a 19-week

## III.  OBJECTIONS TO PROPOSED CLASS NOTICE AND CONSENT FORM

Defendants object to requests in Diggs' Motion related to facilitation of his proposed Class Notice, as well as aspects of that proposed Notice and Consent to Join.

### A.   <u>Contact with Potential Class Members via Text Message should be Prohibited</u>

Diggs requests permission to send a Court-approved Notice and a Court-approved Consent form to putative class members by first class U.S. Mail, e-mail, and through text message. Doc. 25 at pp. 18-19. Defendants do not object to Court-approved Notice being sent via e-mail (with only the subject line stating "Notice of Pendency of Collective Action" and only attaching the Court-approved Notice and Consent with no other text) and via physical mail (with only sending the Court-approved Notice and Consent with no other documents or language suggesting that the lawsuit has been judicially endorsed). However, Defendants object to any attempt by Diggs to send notice via text message.

Diggs has not specified how he plans to send any Court-approved Notice and Consent via text message, which would be impossible as it is a multiple-page document and he therefore would have to state something in the text message. Nothing indicates what this potential text message will say. This is important because the text messages will appear to be endorsed by the Court. Diggs cannot cite to one applicable case approving notification of a collective action via text message.[20] Furthermore, this mode of notice would be much more

---

period between March 2016 and December 2017. *Id.* at ¶ 8. Ovation paid Jackson for 10.4 hours of overtime worked over a 20-week period between January 2017 and March 2018. *Id.* at ¶ 9. Finally, Szabo was paid for .32 hours of overtime incrementally worked over a three-week period between April 2017 and November 2017. *Id.* at ¶ 10. Ovation's payroll records show that Wessels never worked more than 40 hours in a single workweek during his employment. *Id.* at ¶ 11.

[20] The two cases Diggs cites regarding transmittal of notice via text message are distinguishable from this case. *See Landry v. Swire Oilfield Servs., LLC*, 252 F. Supp. 3d 1079, 1129 (D.N.M. 2017) (authorizing notice via text message where the potential class members were "dispersed to various wellsites around the country and

intrusive than notice via physical mail or e-mail. Accordingly, Diggs should not be permitted to send Notice via text message, and Defendants should not be required to provide Diggs with the potential opt-in plaintiffs' telephone numbers.

### B. Disclosure of Personal Information is Unwarranted

Diggs has requested that the Court require Defendants to provide him with the last four digits of potential class members Social Security numbers so that "class members' names can be processed through the national change of address ('NCOA') database to ensure the most up to date physical addresses to effectuate notice." Doc. 25 at p. 24, n. 16. Diggs provides no basis for why such a search must be run in light of his request that Defendants also furnish him with putative class members' last known mailing address. Regardless, any information beyond employee names, last known mailing addresses, and personal e-mail addresses is unwarranted and intrusive. *See Isaacs v. One Touch Direct, LLC*, No. 8:14-cv-1716-T-30EAJ, 2015 U.S. Dist. LEXIS 6211, at *7 (M.D. Fla. Jan. 20, 2015) (finding that disclosure of class member social security numbers and telephone numbers is unnecessary where communication via e-mail and regular mail is available). Accordingly, Defendants should not be compelled to produce social security numbers for potential class members.

### C. Posting of Information in the Workplace is Premature and Unnecessary

Defendants also object to Diggs' request that a copy of any Court-approved Notice and Consent to Join be posted in Defendants' workplace. Diggs' Motion provides no basis for why Defendants should presently make such a posting. Absent such information, Diggs'

---

may be away from their homes and addresses of record for weeks or months at a time."); *Bhumithanarn v. 22 Noodle Mkt. Corp.*, 2015 U.S. Dist. LEXIS 90616, at *12 (S.D.N.Y. July 13, 2015) (authorizing notice via text message where evidence indicated transient nature of potential class members and that text message was the defendants' preferred method of employee communication) (emphasis added).

request is premature and unnecessary. *See id.* at *7; *see also Gonzalez v. TZ Ins. Solutions, LLC*, No. 8:13-cv-2098-T-33EAJ, 2014 U.S. Dist. LEXIS 40188, at *18 (M.D. Fla. Mar. 26, 2014) (noting "other courts have required that Class Notice be posted at the workplace only after a showing that a defendant has failed to cooperate in the collective action process.").

### D.   A 90-Day Notice Period is Inappropriate

Defendants next object to Diggs' requested 90 days for any potential opt-in period as too long and excessive. Based on the authority Diggs has cited, a 90-day notice period would arguably be appropriate <u>if</u> the Notice was communicated to the putative class members by U.S. Mail only.[21] Here, however, Diggs has requested to send Court-approved Notice to potential class members via U.S. Mail <u>and</u> e-mail (to which, as noted above, Defendants do not object). *See* Doc. 25 at pp. 18-19. Given the near instant access Credit Analysts will have to a Notice delivered via e-mail, a 90-day notice period is unwarranted.

Defendants propose a timeline similar to that recently established in *Dean v. W. Aviation, LLC*, No. 17-cv-62282, 2018 U.S. Dist. LEXIS 31976 (S.D. Fla. Feb. 28, 2018). Specifically: (i) Defendants shall have 20 days to provide Diggs' counsel or an agreed upon third party administrator a list of names, physical addresses, and personal/non-Ovation e-mail addresses of all individuals in an agreed-upon class description and file their Notice of Compliance; (ii) Diggs shall then have 20 days to mail and e-mail a Court-approved Notice and a Court-approved Consent to the potential class members and file his Notice of Compliance; and (iii) the individuals who wish to opt-in shall have 45 days from the mailing

---

[21]*See Fiore v. Goodyear Tire & Rubber Co.,* 2011 U.S. Dist. LEXIS 24371, at *11 (M.D. Fla. Mar. 10, 2011) (setting 90-day notice period where notice and consent to join were sent by U.S. Mail only); *Ballew v. Lennar Corp.,* 2008 U.S. Dist. LEXIS 69040, at *4 (M.D. Fla. Sept. 11, 2008) (same); *Gandhi v. Dell, Inc.,* 2009 U.S. Dist. LEXIS 96793, at *6, *8 (W.D. Tex. Oct. 20, 2009) (same).

date to do so and return and file their Consent within that time period. *See id.* at *21-22.

### E.   A Reminder Notice is neither Appropriate nor Warranted

Defendants also object to Diggs' proposal to use of reminder notices. "[S]uch notices [are] unnecessary and redundant" and "[r]eminder notices may also 'be interpreted as encouragement by the Court to join the lawsuit,' which would be improper." *Dean*, 2018 U.S. Dist. LEXIS 31976, at *19. A reminder notice "would be at odds with the purpose for judicial notice – which is simply to inform potential class members of their rights. Once they receive that information, it is their responsibility to act as they see fit." *Robinson v. Ryla Teleserv., Inc.*, No. 11-cv-131, 2011 U.S. Dist. LEXIS 147027, at *19, n. 7 (S.D. Ala. Dec. 21, 2011). Therefore, no reminder notice should be issued in this case.

### F.   The Class Notice Should Include Defense Counsel's Contact Information

While Diggs' proposed Notice provides his counsel's contact information, it does not provide contact information for Defendants' counsel even though "courts often include the contact information for both plaintiff's counsel and defense counsel in this notice." *Dean*, 2018 U.S. Dist. LEXIS 31976, at *11-12. Therefore, Defendants request that their counsel's contact information appear in any Notice.

### G.   The Class Notice Should Advise Potential Opt-ins of their Right to Counsel and Should not Make Representations about Paying for Legal Services

As recognized in *Dean*, "it would be improper to not inform potential opt-in plaintiffs of their right to consult with and retain an attorney of their own selection." *Id.* at *9. Diggs' proposed Notice fails to inform potential class members of that right; rather, it only advises them that the will be represented by Diggs' counsel if they choose to join the lawsuit. *See*

23

Doc. 25-1 at p. 3. Thus, Defendants request that the Notice include language informing all recipients that they have the right to consult with and retain their preferred counsel.

Furthermore, Defendants object to the inclusion of the statement "You will not be required to pay attorneys' fees directly," in the proposed Notice. That statement presupposes a fee arrangement that might never be, and gives the impression of free legal services.

### H. The Class Notice Should Adequately Advise Potential Opt-in Plaintiffs of their Obligations in this Action

Next, as Defendants have included a request for attorneys' fees and costs in their Answer[22], the proposed Notice should disclose the potential liability for attorney's fees and costs should individuals opt in and not prevail in the litigation. "[T]he Eleventh Circuit has explained that 'in exceptional circumstances a defendant can recover attorney's fees [in FLSA cases] when the plaintiff brings suit in bad faith.'" *Dean*, 2018 U.S. Dist. LEXIS 31976, at *12. As such, "[i]n the interest of providing accurate and informative notice to potential opt-in plaintiffs … it necessary to inform them of the potential liability for costs and attorney's fees should they not prevail in this action." *Id.* at *13. Defendants further assert that the Notice should include that the opt-in plaintiffs may be required to testify at trial in Jacksonville, Florida. *See id.* at *15.

### I. The Consent to Join Should Not Suggest Diggs' Counsel be Hired

Defendants object to Diggs' proposed Consent to Join to the extent that it improperly acts as a solicitation for Diggs' counsel by stating "I agree to be represented by Morgan and Morgan, counsel for the named Plaintiff[.]" Doc. 25-2. For the reasons discussed above in Section III(G), *supra*, this language should be removed.

---

[22] *See* Doc. 12 at p. 4.

24

**J.    The Consent to Join Should Not Suggest that it Can be Reused**

Finally, Defendants object to the language in Diggs' proposed Consent to Join authorizing his counsel to reuse the form to file a claim in a separate or related action against Defendants. *See* Doc. 25-2; *see also Rojas v. Garda*, 297 F.R.D. 669, 681 (S.D. Fla. 2013) ("the notion that Plaintiffs may reuse consent forms in separate actions that, no matter how related, are likely to involve different claims or different class definitions is untenable.").

## IV.   CONCLUSION

For the foregoing reasons, Diggs' Motion should be denied.

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that the foregoing document was electronically filed this 31st day of October 2018 by using the CM/ECF system, which will send notice of electronic filing of the foregoing document to Andrew R. Frisch, Esq. (afrisch@forthepeople.com), Morgan & Morgan, P.A., 600 N. Pine Island Road, Suite 400, Plantation, FL 33324, Attorneys for Plaintiff and Opt-in Plaintiffs.

Respectfully submitted this 31st day of October 2018.

By: */s/ Michael J. Lufkin*
Eric J. Holshouser
Florida Bar No. 307734
E-mail: eric.holshouser@bipc.com
Michael J. Lufkin
Florida Bar No. 0030492
Email: michael.lufkin@bipc.com
BUCHANAN INGERSOLL & ROONEY, P.C.
50 North Laura Street, Suite 2800
Jacksonville, FL  32202
(904) 598-3100 – Telephone
(904) 598-3131 – Facsimile
Attorneys for Defendants

25