**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

VERNON DIGGS, individually and
on behalf of those similarly situated,

      Plaintiff,

v.                                          Case No. 3:18-cv-367-J-34MCR

OVATION CREDIT SERVICES, INC.,
TERRY D. CORDELL, and AMY MYERS,

      Defendants.
_____/

## ORDER

**THIS CAUSE** is before the Court on Plaintiff's <u>expedited</u> Motion to Conditionally Certify Collective Action and Facilitate Notice to Potential Class Members and Incorporated Memorandum of Law (Doc. 25; Motion). Defendants have filed a response in opposition to the Motion. <u>See</u> Defendants' Response Opposing Plaintiff's Expedited Motion to Conditionally Certify Collective Action and Facilitate Notice to Potential Class Members and Memorandum of Law (Doc. 30; Response). Thus, the Motion is ripe for review.

**I.**      **Background**

Plaintiff Vernon Diggs initiated this putative collective action on March 16, 2018, by filing a two-count Complaint and Demand for Jury Trial (Doc. 1; Complaint) against Defendants Ovation Credit Services, Inc., Terry D. Cordell (Ovation's president), and Amy Myers (Ovation's vice president). In the Complaint, Diggs alleges that Defendants violated the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 <u>et</u> <u>seq.</u>, by failing to compensate him and other similarly situated employees for their overtime hours (Count One) and by failing to pay him and other similarly situated employees a minimum wage (Count Two).

Specifically, Diggs alleges that "[f]rom at least August 9, 2016, and continuing through April 2017, Defendants failed to compensate [him] at rate of one and one-half times [his] regular rate for all hours worked in excess of forty (40) hours in a single work week." Id. at 4. Diggs further alleges that "Defendants failed to pay [him] at least federal minimum wage for all hours worked." Id. Between March 26, 2018 and July 3, 2018, five other Ovation employees—Kimberly Gosse, Gabor Szabo, Daniel Wessels, Michael Robinson, and Ernest Jackson—opted into the litigation by filing notices of their consent to become party plaintiffs (collectively, the opt-in Plaintiffs). See Notices of Consent to Join (Doc. 7-1; Doc. 8-1; Doc. 11-1; Doc. 15-1; Doc 21-1). The instant Motion for conditional certification followed on September 26, 2018.

In support of the Motion, Diggs has submitted his own declaration and declarations from the five opt-in Plaintiffs. See Motion, Exhibit E: Declaration of Vernon Diggs (Doc. 25-5; Diggs Decl.); Exhibit F: Declaration of Kimberly "Eve" Gosse (Doc. 25-6; Gosse Decl.); Exhibit G: Declaration of Ernest Jackson (Doc. 25-7; Jackson Decl.); Exhibit H: Declaration of Michael Robinson (Doc. 25-8; Robinson Decl.); Exhibit I: Declaration of Gabor Szabo (Doc. 25-9; Szabo Decl.); Exhibit J: Declaration of Daniel Wessels (Doc. 25-10; Wessels Decl.).[1]

In his declaration, Diggs provides the following relevant information:

    3.    I worked for Defendants . . . from approximately August 2016 to November 2017.

    4.    Throughout my employment, I worked as an inside sales representative employee.

---

[1] Diggs also submitted Myers' LinkedIn profile, a printout from Ovation's website describing its services, an Ovation job posting for a "sales – credit analyst," and paystubs. See Motion, Exhibit D: Myers' LinkedIn Profile (Doc. 25-4); Exhibit K: Ovation's Credit Repair Services (Doc. 25-11); Exhibit L: Job Posting (Doc. 25-12); Exhibit M: Paystubs (Doc. 25-13).

2

5. All of Defendants' inside sales representatives, including me, were paid by the hour for each hour worked up to 40 hours per workweek.

6. I was required to call potential leads and sell them credit repair services.

7. As with all of Defendants' inside sales representatives, I was required to hit a quota of 21 sales per pay period (or the next commission tier), or I would be written up and potentially terminated.

8. During my employment with Ovation, the Defendants' [sic] and its supervisors regularly encouraged all inside sales representatives, including me, to work over forty (40) hours in a workweek to reach our required sales quota or the next commission tier.

9. When we worked more than 40 hours a week we were not paid time and half our regular rate of pay for hours over 40. In fact, no inside sales representative, including me, received any compensation whatsoever for hours worked over 40.

10. Based on my personal observations during my employment with Ovation, I am aware that all of Ovation's inside sales representatives performed similar duties to me, all were paid in a similar manner – hourly up to 40 hours per week, and none of them were paid for hours worked over 40 in a workweek.

11. Based on my discussions with other inside sales representatives during my employment with Ovation, I understand that other inside sales representatives, including Earnest Jackson, Robert Jones, Alex Poulot, Anthony Edwards, Shieka Burnett, Arthur McCorker, Darian Snodey, Michael Robinson, and Tazwell Stuart would opt-in to this case and pursue their claims for unpaid overtime to the extent they received Court-approved notice of their right to do so. To date, Kimberly "Eve" Gosse, Gabor Szabo and Daniel Wessels have opted-in.

Diggs Decl. at 1-2. The declarations of the opt-in Plaintiffs are substantively identical to Diggs' declaration, except that the opt-in Plaintiffs do not reference any other potential employees that might wish to opt-in and their dates of employment are different.[2]

In support of their Response, Defendants have submitted declarations from Defendant Cordell and from three Ovation employees: Alex Poulot, Tazwell Stuart, and Timothy Scott. See Defendants Ovation Credit Services, Inc., Terry D. Cordell, and Amy Myers' Notice of Filing Declarations in Support of Defendants' Response Opposing Plaintiff's Expedited Motion to Conditionally Certify Collective Action and Facilitate Notice to Potential Class Members (Doc. 31), Attachment 1: Declaration of Terry D. Cordell, Esq. (Doc. 31-1; Cordell Decl.); Attachment 2: Declaration of Alex R. Poulot (Doc. 31-2; Poulot Decl.); Attachment 3: Declaration of Timothy Scott (Doc. 31-3; Scott Decl.); Attachment 4: Declaration of Tazwell Stuart (Doc. 31-4; Stuart Decl.). Cordell has been the President of Ovation since 2004. See Cordell Decl. ¶ 2. In his declaration, Cordell states that "Ovation sells credit repair, credit monitoring, and credit education services to the general public by telephone and the internet." Id. ¶ 3. Although Diggs and the opt-in Plaintiffs called themselves inside sales representatives, Cordell states that Ovation does not have such a position. Id. at ¶ 6. Instead, Cordell states, and Diggs does not dispute, that Ovation employed Diggs and the opt-in Plaintiffs as credit analysts. Id. Cordell further states that, in addition to being employed as credit analysts, Diggs and Gosse also served as sales managers during a portion of their employment with Ovation. Id. ¶¶ 6,7. Cordell avers that

---

[2] Gosse worked at Ovation from approximately February 2015 to January 2017, see Gosse Decl. ¶ 3; Szabo from approximately April 2017 to November 2017, see Szabo Decl. ¶ 3, Wessels from approximately January 2017 to July 2017, see Wessels Decl. ¶ 3; Robinson from approximately November 2015 to November 2017, see Robinson Decl. ¶ 3; and Jackson from approximately January 10, 2017 through March 23, 2018, see Jackson Decl. ¶ 3.

4

credit analysts are paid an hourly wage plus commissions based on the number of products and/or services the credit analyst sells to individual consumers over a two-week payroll period. Id. at ¶¶ 6, 13. According to Cordell, "Ovation has never had a policy or practice of requiring or knowingly allowing Credit Analysts to work off the clock or to not record all hours worked. In fact, Ovation's policy is the opposite—you are not supposed to work off the clock." Id. ¶ 15. Similarly, Cordell states that Ovation has a written overtime policy. See id. ¶¶ 16-17.

Alex Poulot has worked as a credit analyst for Ovation on and off since June 2015, see Poulot Decl. ¶ 2, and Tazwell Stuart has worked as a credit analyst since September 2016, see Stuart Decl. ¶ 2. Contrary to Diggs' assertion that Poulot and Stuart expressed their interest in joining the action, Poulot and Stuart state in their declarations that they have no desire to be involved in the lawsuit, and they do not know any credit analysts who want to be involved. See Poulot Dec. ¶ 13; Stuart Decl. ¶ 14. Timothy Scott has worked at Ovation since February 2017, first as a credit analyst and later as a sales manager. See Scott Decl. ¶ 2. He also states that he has no desire to join the lawsuit and knows of no credit analyst at Ovation who would want to do so. Id. ¶ 15. Poulot, Stuart, and Scott all state that they have never: (1) worked off the clock; (2) been asked to work off the clock; (3) asked anyone else to work off the clock; or (4) witnessed anyone at Ovation working off the clock; and that Ovation does not have a policy of requiring credit analysts to work off the clock. See Poulot Decl.; Stuart Decl.; Scott Decl.

## II. Applicable Law

To support enforcement of the FLSA, § 216(b) permits an employee to bring an action against his employer for FLSA violations on behalf of himself and "other employees similarly situated." 29 U.S.C. § 216(b). Section 216(b) contains an "opt-in" provision that requires all similarly situated employees to consent in writing before becoming party plaintiffs. Id.; see also Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1258 (11th Cir. 2008). The Court has the authority to issue an order requiring notice to similarly situated employees to facilitate the opt-in process. See Grayson v. K Mart Corp., 79 F.3d 1086, 1095-97 (11th Cir. 1996).[3] For notice to issue, the plaintiff must show that "there are other employees of the . . . employer who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." Dybach v. State of Fla. Dep't of Corr., 942 F.2d 1562, 1567-68 (11th Cir. 1991). Congress' purpose in authorizing § 216(b) collective actions "was to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer." Prickett v. DeKalb County, 349 F.3d 1294, 1297 (11th Cir. 2003). The decision to conditionally certify a collective FLSA action lies within the discretion of the Court. See Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1217, 1219 (11th Cir. 2001).[4]

---

[3] Although Grayson addressed collective actions under the Age Discrimination and Employment Act of 1967, 29 U.S.C. § 621 et seq., "that statute incorporates the FLSA's collective action mechanism," and, thus, the analysis in Grayson "'applies in both contexts.'" See Morgan, 551 F.3d at 1259 n.37; see also Anderson v. Cagle's, Inc., 488 F.3d 945, 952-53 & n.5 (11th Cir. 2007).

[4] A collective action under the FLSA is different from a class action under Rule 23, Federal Rules of Civil Procedure. See Grayson, 79 F.3d at 1096 n.12 ("[I]t is clear that the requirements for pursuing a § 216(b) class action are independent of, and unrelated to, the requirements for class action under Rule 23 . . . ."). Unlike traditional class actions in federal court, potential FLSA class members must opt into the lawsuit by filing a "consent in writing to become such a party" with the court where the suit is pending. 29 U.S.C. § 216(b). See also Hipp, 252 F.3d at 1216. A plaintiff's burden of establishing that other employees are "similarly situated" is less stringent than for Rule 20 joinder or certification of a class action under Rule 23. Grayson, 79 F.3d at 1096.

The Eleventh Circuit Court of Appeals has "suggested that district courts deciding whether to certify a collective action [under § 216(b)] engage in a two-stage analysis . . . ." Anderson, 488 F.3d at 952; see also Cameron-Grant v. Maxim Healthcare Servs., Inc., 347 F.3d 1240, 1243 n.2 (11th Cir. 2003).

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives—i.e. the original plaintiffs—proceed to trial on their individual claims.

Id. at 1243 n.2 (quoting Hipp, 252 F.3d at 1218).[5]

At the notice stage, the Court does not review the underlying merits of the case. See Pares v. Kendall Lakes Auto., LLC, Case No. 13-cv-20317, 2013 WL 3279803, at *3 (S.D. Fla. June 27, 2013); Kerce v. W. Telemarketing Corp., 575 F. Supp. 2d 1354, 1358

---

[5] The two-stage approach endorsed in Hipp was borrowed from the Fifth Circuit's discussion in Mooney v. Aramco Servs. Co., 54 F.3d 1207 (5th Cir. 1995). See Hipp, 252 F.3d at 1218; see also Anderson, 488 F.3d at 952-53. As recognized in Anderson, Mooney has since been overruled in part on other grounds, but the two-stage approach to class certification under § 216(b) remains applicable. See Anderson, 488 F.3d at 952-53 & n. 6.

(S.D. Ga. 2008). In determining whether notice of the action should be given to potential class members, the district court usually considers only "the pleadings and any affidavits which have been submitted[.]" Rodgers v. CVS Pharmacy, Inc., Case No. 8:05-cv-77-27MSS, 2006 WL 752831, at *3 (M.D. Fla. March 23, 2006). The plaintiff has the burden of demonstrating "a reasonable basis" for the assertion that there are other similarly situated employees who desire to opt into the action. Haynes v. Singer Co., 696 F.2d 884, 887 (11th Cir. 1983). However, "[b]ecause the court has minimal evidence [at the notice stage], this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." Hipp, 252 F.3d at 1218 (quoting Mooney, 54 F.3d at 1216)).

## III.   Discussion

In the instant Motion, Diggs requests conditional class certification and authorization to notify potential class members of the opportunity to opt into this case pursuant to the FLSA. See generally Motion. In particular, Diggs seeks an order "conditionally certifying a class of current and [former] [inside sales representatives] or Credit Analysts who worked for Defendants for the three year period prior to the filing of the Complaint in this case to the present." Motion at 24. In response, Defendants assert that the Motion should be denied because: (1) Diggs has failed to establish that the putative class members are similarly situated, see Response at 6-15; (2) Diggs has failed to present sufficient evidence that other potential members desire to opt in, id. at 15-18; and (3) Ovation maintained written overtime policies, id. at 18-19. For the reasons set forth below, the Court determines that Diggs has met his burden in demonstrating that conditional certification is proper.

### A. Other Employees Desire to Opt In

First the Court must determine whether Diggs has met his "burden of demonstrating a reasonable basis for crediting [his] assertion[ ] that aggrieved individuals exist[ ] in the broad class that [he] proposed." Haynes, 696 F.2d at 887. "Evidence of other employees who desire to opt in may be based on affidavits, consents to join the lawsuit, or expert evidence on the existence of other similarly-situated employees." Rodgers, 2006 WL 752831, at *3. The plaintiff's burden "is not onerous." See Alequin v. Darden Rest., Inc., Case No. 12-cv-61742, 2013 WL 3939373, at *4 (S.D. Fla. July 12, 2013). However, in making this showing, a plaintiff cannot rely on speculative, vague, or conclusory allegations, see Rodgers, 2006 WL 752831, at *3, but rather must set forth "detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary," Grayson, 79 F.3d at 1097 (internal quotations and citation omitted). In other words, a "plaintiff must proffer a minimum quantum of evidence to warrant the creation of a collective [action]. The mere anticipation that others may want to join the lawsuit or the mere presence of a uniformly adverse compensation policy is insufficient by itself." Guerra v. Big Johnson Concrete Pumping, Inc., Case No. 05-cv-14237, 2006 WL 2290512, at *4 (S.D. Fla. May 17, 2006).

Upon consideration, the Court finds that Diggs provides specific facts to support his belief that other employees are interested in opting into this litigation. Indeed, this is not the type of case where "the plaintiff attempts to conditionally certify a broad group based only on the conclusory and unsupported allegations of a few employees." See, e.g., Alvarez v. Sun Commodities, Inc., Case No. 12-cv-60398, 2012 WL 2344577, at *2 n.3

9

(S.D. Fla. June 20, 2012) (internal quotation marks and citation omitted).[6] To the contrary, in his declaration Diggs identifies nine other employees he believes are interested in joining the action based on his discussions with credit analysts while he worked for Ovation. See Diggs. Decl. ¶ 11. The Court acknowledges that two of those employees (Poulot and Stuart) have submitted declarations stating that they have no desire to join the action. However, two others (Jackson and Robinson) have since submitted notices of consent to join, which supports Diggs' statement that there are other employees who desire to join the action. And three other employees, not identified by Diggs, have also filed notices of consent to join between the filing of the Complaint and the instant Motion. Although Diggs is vague about the size of the putative collective class or the number of (former and current) employees affected by Defendants' alleged failure to pay overtime, "there is no magic number requirement for the notice stage." Gonzalez v. TZ Ins. Solutions, LLC, Case No. 8:13-cv-2098-T-33EAJ, 2014 WL 1248154, at *2 (M.D. Fla. March 26, 2014). Indeed, many district courts have found a plaintiff to have carried the burden based on the existence of only a few other similarly situated workers. See id. at *2 ("[T]he presence of five opt-in

---

[6] As Defendants point out, there are numerous examples of courts declining to grant conditional certification of collective FLSA actions because of a lack of demonstrated interest by other employees. See Response at 15-18. In arguing that the Court should deny conditional certification here, Defendants cite to, inter alia, this Court's decision in Kubiak v. S.W. Cowboy, Inc., Case No. 3:12-cv-1306-J-34JRK, 2014 WL 2625181 (M.D. Fla. June 12, 2014), in which the Court denied the plaintiffs' motion for conditional certification because the plaintiffs failed to meet their burden of showing that others desired to opt in. See id. at *11. However, Kubiak is easily distinguishable from the instant case. For example, the parties in Kubiak agreed that the motion for conditional certification in that case "was more appropriately determined at the second stage level, because significant discovery [had] taken place." Id. at *7. As such, the Court looked beyond the plaintiffs' "conclusory allegations that others desir[ed] to join the collective action," see id. at 10, and considered the extensive record before the Court, including the opt-in plaintiffs' deposition testimony. In concluding that the plaintiffs had failed to meet their burden of showing that others desired to opt in, the Court considered, among other things, the fact that "none of the servers deposed were able to provide additional details about others who desired to join, or specific names. In contrast, Defendants [ ] submitted more than 50 declarations by current and former servers . . . who state[d] that their participation in the Kitchen Tip Pool was voluntary." Id. Here, however, the Court considers the issue of "notice stage" conditional certification and Diggs has identified other employees who wish to join by name. Thus, Kubiak is too distinct to be of assistance.

plaintiffs, each having filed a declaration describing their working conditions and their desire to join in this suit, satisfies the Court that others desire to join in the action."); Pares, 2013 WL 3279803, at *5 (concluding that "the affidavits from the two other employees shows that at least two other co-workers desire to join the suit, 'thereby raising [Plaintiffs'] contention beyond one of pure speculation.'" (quoting Guerra, 2006 WL 2290512, at *4) (alteration in original)).[7] Thus, the Court finds that Diggs has established a reasonable basis to support his assertion that at least five more employees desire to join the action.

### B.   The Employees Are Similarly Situated

Next the Court must determine whether Diggs has shown that he is similarly situated to the potential class of plaintiffs for which he seeks certification.  See Morgan, 551 F.3d at 1259.  "At the notice stage, the 'similarly situated' requirement is particularly lenient." Monserrate v. Hartford Fire Ins. Co., Case No. 6:14-cv-149-Orl-37GJK, 2015 WL 4068388, at *3 (M.D. Fla. July 2, 2015).  "Plaintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members."  Grayson, 79 F.3d at 1096 (internal quotation marks and citation omitted).  Although the FLSA does not define the

---

[7] Examples of cases where a small number of opt-in plaintiffs satisfied the threshold of interest required for a collective action are numerous. See, e.g., Rojas v. Garda CL SE, Inc., 297 F.R.D. 669, 2013 WL 6834657, at *5 (S.D. Fla. Dec. 23, 2013) (granting conditional certification where 14 employees indicated their desire to join the litigation by filing notices and plaintiff asserted he had personal knowledge that others were interested in opting in) (collecting cases); Sutton v. Premium Car Wash, Case No. 6:12-cv-1254-Orl-28TBS, 2013 WL 2474416, at *2 (M.D. Fla. June 10, 2013) (granting conditional certification based on plaintiff and five consents to join); Stuven v. Texas de Brazil (Tampa) Corp., Case No. 8:12-cv-1283-T-24TGW, 2013 WL 610651, at *3 (M.D. Fla. Feb. 19, 2013) (granting conditional certification based on declarations of two plaintiffs stating they believe others will join the lawsuit, plus three opt-in plaintiffs); Bobbitt v. Broadband Interactive, Inc., Case No. 8:11-cv2855-T-24MAP, 2012 WL 1898636, at *4 (M.D. Fla. May 23, 2012) (granting conditional certification based on six notices of consent to join; court not persuaded by 17 declarations filed by employees stating they do not wish to join the litigation); Espanol v. Avis Budget Rental, LLC, Case No. 8:10-cv-944-T-30AEP, 2011 WL 4947787, at *2 (M.D. Fla. Oct. 18, 2011) (granting conditional certification where "[a]t least eight individuals have filed notices of consent to opt-in"); Reyes v. AT&T Corp., 801 F. Supp. 2d 1350, 1353, 1356 (S.D. Fla. 2011) (granting conditional certification based on affidavits from five named plaintiffs and consent forms from seven employees); Harris v. Performance Transp., LLC, 8:14-CV-2913-T-23EAJ, 2015 WL 1257404, at *4 (M.D. Fla. Mar. 18, 2015) ("With Mr. Harris and four known opt-in plaintiffs, Plaintiffs have met their burden of demonstrating that they meet this requirement.").

term "similarly situated," and the Eleventh Circuit has "not adopted a precise definition of the term," the Eleventh Circuit has suggested that courts look to "job requirements" and "pay provisions" to determine whether employment positions are similar. See Dybach, 942 F.2d at 1567-68. See also Harris v. Performance Transp., LLC, Case No. 8:14-cv-2913-T-23EAJ, 2015 WL 1257404, at *4 (M.D. Fla. Mar. 18, 2015) (citations omitted) ("Factors considered for determining whether potential plaintiffs are similarly situated include employees' job duties, pay provisions, and the commonality of their claims.").

As outlined above, Diggs and the opt-in Plaintiffs assert that they worked for Defendants as credit analysts.[8] Diggs and the opt-in Plaintiffs state that their job duties as credit analysts consisted of calling "potential leads" and selling them credit repair services. See Diggs Decl. ¶ 6; Gosse Decl. ¶ 5; Wessels Decl. ¶ 5; Robinson Decl. ¶ 5; Jackson Decl. at ¶ 5; Szabo Decl. ¶ 6. In addition, an Ovation Job Posting submitted by Diggs describes the job duties of a credit analyst as "[s]peaking with consumers who have negative items on their credit reports[,] selling these consumers on Ovation's products and services to repair their credit[, and] [a]cquiring these consumers as clients of Ovation Credit Services[.]" See Job Posting. Regarding their pay provisions, Diggs and the opt-in Plaintiffs state that Ovation compensated them on an hourly basis with the ability to earn commissions based on the number of products and/or services sold to consumers over a specified period.[9] Likewise, the Job Posting states that Ovation pays credit analysts "a

---

[8] Diggs and the opt-in Plaintiffs refer to themselves as both inside sales representatives and credit analysts. However, Defendants clarify, and Diggs does not dispute, that Diggs and the opt-in Plaintiffs had the job title credit analyst. See Cordell Decl. ¶ 6; Motion at 6.

[9] Defendants argue "that Diggs and the opt-in Plaintiffs are dissimilar in compensation to the rest of the putative class," because their declarations recognize only an hourly wage when in fact "Ovation pays its Credit Analysts an hourly wage plus commissions . . . ." See Response at 7-8. The Court finds this argument unavailing, as Diggs and the opt-in Plaintiffs recognize their ability to earn a commission. See Diggs Decl. ¶¶ 7-8; Gosse Decl. ¶¶ 6-7; Wessels Decl. ¶¶ 6-7; Robinson Decl. ¶¶ 6-7; Jackson Decl. at ¶¶ 6-7; Szabo

base hourly rate PLUS commission." Id.  Finally, Diggs and the opt-in Plaintiffs assert the same FLSA violation against Defendants—that Defendants regularly encouraged its credit analysts to work over 40 hours a week to reach the required sales quota or the next commission tier, and when credit analysts worked more than 40 hours a week, Ovation failed to pay them time and a half for the additional hours worked.

Thus, for purposes of notice stage conditional certification, the Court is satisfied that Diggs and the opt-in Plaintiffs have the same job duties and pay provisions as all of Ovation's credit analysts.  Indeed, despite its objections to the lack of detail in the declarations, Defendants do not assert that Ovation's credit analysts have different job responsibilities or pay provisions than those described by Diggs and the opt-in Plaintiffs.[10]  To the contrary, Cordell confirms that "Ovation sells credit repair, credit monitoring, and credit education services to the general public by telephone and the internet," Cordell Decl. ¶ 3, and states that credit analysts are paid "an hourly wage plus commissions based on the number of products and/or services the credit analyst sold to individual consumers over a two-week payroll period," Id. at ¶¶ 6, 13.  In short, the Court is satisfied that the members

---

Decl. ¶¶ 7-8.  See also Motion at 6 (stating that Diggs and the opt-in Plaintiffs are similarly situated to all of Defendants' credit analysts because, inter alia, "they are all compensated on an hourly basis with the ability to earn commission").

[10] Defendants argue that the declarations submitted by Diggs and the opt-in Plaintiffs fail to provide sufficient detail to establish that they are similarly situated to the proposed class. See Response at 7-10. In support, Defendants contend that, among other things, the declarations "(i) provide no specific example of when any of the Plaintiffs' worked more than 40 hours in a workweek or worked off the clock, (ii) fail to identify a specific person who required them to work off the clock, and (iii) fail to state that they actually worked off-the-clock or otherwise did not record time worked over 40 hours in a workweek." Response at 8-9. Upon consideration, the Court concludes that these arguments go to the merits of Diggs' claims, and are therefore more appropriate for a stage two motion to decertify. See Reese v. Florida Bc Holdings, LLC, Case No. 6:17-cv-1574-Orl-41GJK, 2018 WL 1863833, at *4 (M.D. Fla. Mar. 16, 2018), report and recommendation adopted, 2018 WL 2011334 (Apr. 30, 2018) ("At the conditional certification stage, the merits of the parties' claims are not weighed; instead, the plaintiff's burden focuses on their allegations of similarity, not refuting the defendant's arguments and defenses."); Russell v. Life Win, Inc., Case No. 8:11-cv-2802-T-26TBM, 2014 WL 7877787, at *4 (M.D. Fla. Apr. 23, 2014) ("[D]ifferences as to time actually worked, wages actually due, and hours involved are not significant to the conditional certification determination.").

of the proposed class have the same job title, basic job duties, and pay provisions and seek to assert the same FLSA violation against Defendants.

Nevertheless, Defendants contend that "the proposed class members are not similarly situated because the prospective class could contain both exempt and non-exempt employees." Response at 10. In support, Defendants point out that Diggs and Gosse "served as managers during the proposed notice period. As managers, these employees were paid on a salary basis and were exempt from [the FLSA's] overtime provisions . . . ." Id. The Court finds this argument unavailing as Diggs and Gosse will only assert overtime claims against Ovation for the time they were non-exempt employees. Indeed, Defendants cite no authority for the proposition that a plaintiff cannot be considered similarly situated to the entire class unless he shared the same job title throughout the entire period of his employment.

Defendants also maintain that conditional certification is improper based on their defense that some credit analysts were exempt from the FLSA's overtime requirements pursuant § 207(i) of the FLSA (the 7(i) exemption).[11] See Response at 11-14. Defendants contend that application of the 7(i) exemption will require a "highly specific" and individualized assessment of each employee's commissions earnings. In support of their argument, Defendants primarily rely on the opinions of three district courts that denied conditional certification because, among other things, the defendant would be asserting a

---

[11] Section 207(i) of the FLSA provides that:
> No employer shall be deemed to have violated [the overtime provisions] of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under the [minimum wage section] of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services.

29 U.S.C. § 207(i).

14

defense based on the 7(i) exemption.  See Response at 12-14 (citing Kelley v. Taxprep1, Inc., Case No. 5:13-cv-451-Oc-22PRL, 2014 WL 10248251 (M.D. Fla. Apr. 2, 2014); Calvo v. Summit Broadband Inc., Case No. 2:16-cv-746-FtM-38MRM, 2018 WL 3635104 (M.D. Fla. Apr. 17, 2018), report and recommendation adopted, 2018 WL 3635077 (May 3, 2018); Tussing v. Quality Res., Inc., Case No. 8:09-cv-1833-T-26AEP, 2009 WL 4350253 (M.D. Fla. Nov. 25, 2009)).[12]

However, several district courts in this Circuit have concluded that arguments regarding defenses like the 7(i) exemption are better suited for a motion to decertify.  See, e.g., Russell, 2014 WL 7877787, at *3 ("[T]he argument [regarding the 7(i) exemption] is essentially an attack on the merits of Plaintiff's claims and runs contrary to the aforementioned standard governing stage one of conditional certification under the FLSA.  Indeed, individual circumstances are inevitably present in a collective action.  At this stage, however, courts do not weigh the merits underlying the claims in determining whether potential opt-in plaintiffs may be 'similarly situated.'"); Harris, 2015 WL 1257404, at *3 ("[T]he applicability of the motor carrier exemption at [the notice] stage of the litigation should not be a bar to conditional certification because FLSA exemptions are construed narrowly and against the employer, and the burden is on the employer to establish entitlement to an exemption."); Allen v. Hartford Fire Ins. Co., Case No. 6:16-cv-1603-Orl-37KRS, 2017 WL 3701139, at *8 (M.D. Fla. Aug. 25, 2017) ("The arguments regarding . .

---

[12] Defendants also rely on Johnson v. TGF Precision Haircutters, Inc., Case No. H-03-3641, 2005 WL 1994286, at *6 (S. D. Tex. Aug. 17, 2005), to demonstrate the individualized nature of the 7(i) exemption. See Response at 11-12.  However, as Defendants recognize, Johnson was decided at the decertification stage, where the plaintiffs must meet a higher burden of proof and courts consider several factors not addressed at the conditional certification stage, including "the various defenses available to defendant which appear individual to each plaintiff."  Id. at *1.  See also Morgan, 551 F.3d at 1261-62 (noting that one factor courts should consider at the second stage is "the various defenses available to defendant[s] [that] appear to be individual to each plaintiff").

. whether individual issues predominate are properly addressed under the more stringent stage-two analysis. . . . Thus, the Court leaves for another day the determination as to whether individualized determinations on the application of the administrative exemption will render this action ill-suited to proceed collectively."); Vondriska v. Premier Mortg. Funding, Inc., 564 F. Supp. 2d 1330, 1335-36 (M.D. Fla. 2007) ("Defendant[s'] arguments appear to be relevant to the application of various exemptions from the FLSA, which is more properly addressed after discovery is completed."); Molina v. Ace Homecare LLC, Case No. 8:16-cv-2214-T-27TGW, 2017 WL 3605377, at *2 (M.D. Fla. Aug. 21, 2017) ("Defendants' exemption argument is more properly addressed after discovery is completed."). Considering the more lenient standard governing a stage one motion for conditional certification, the Court finds the analysis in these cases persuasive over that in Calvo, Kelley, and Tussing.[13] As such, the Court will not consider Defendants' exemption argument at the notice stage of the case. In sum, at this stage of the proceeding, Diggs has satisfied his burden of demonstrating that there are similarly situated employees warranting conditional certification of a collective action in this case.

 **C. Notice**

Diggs also asks the Court to approve his proposed notice form. See Motion at 18-25; Id., Exhibit A: Class Notice (Doc. 25-1; Proposed Notice). In response, Defendants assert numerous objections to the Proposed Notice and proposed means of dissemination. See Response at 20-25. Given the number of objections and the amount of time having passed since the parties last conferred on these issues, the Court finds it appropriate to

---

[13] Similarly, the Court declines to adopt Defendants' argument that the existence of written overtime policies precludes the conditional certification of Diggs' proposed class. See Response at 18-19. Like Defendants' arguments regarding the non-exempt status of some employees, the Court finds that this argument goes to the merits of the case.

direct the parties to meaningfully confer, either in person or by extensive telephone conference, to try to resolve Defendants' objections to the Proposed Notice.  After doing so, the parties shall file a joint proposed class notice form for distribution to putative class members.  If the parties have not been able to resolve all of Defendants' objections, then the parties shall file a joint brief to the court that states each side's position regarding the remaining objections still in dispute.  The Court expects the parties to make every effort to resolve their disputes without further Court intervention.

Accordingly, it is **ORDERED**:

1.	Plaintiff's <u>expedited</u> Motion to Conditionally Certify Collective Action and Facilitate Notice to Potential Class Members and Incorporated Memorandum of Law (Doc. 25) is **GRANTED** to the extent Diggs seeks conditional certification of the putative class identified in the Motion.

2.	**On or before October 25, 2019**, the parties shall meaningfully confer, either in person or by extensive telephone conference, as directed herein, and file a joint proposed class notice form for distribution to putative class members.  **By that same date**, if the parties have not been able to resolve all of Defendants' objections, then the parties shall file a joint brief to the court stating each side's positions regarding any remaining objections still in dispute.

3. The Court defers ruling on Diggs' request for Court approval of the Proposed Notice (Doc. 25-1) until after the parties have meaningfully conferred on the issue.

**DONE AND ORDERED** in Jacksonville, Florida on September 25, 2019.

*[signature]*
MARCIA MORALES HOWARD
United States District Judge

Lc 23
Copies to:
Counsel of Record